Before I begin, I'd like to reserve three minutes of time for rebuttal, if that's okay with the court. Thank you. May it please the court, my name is Michael Markman, appellar ermine, representing the Plaintiffs and Appellants, Santa Clara County Democratic Central Committee, and its chairman, Stephen Preminger. There is no dispute in this case that voter registration is core political speech. And the reason that we're here today is because the Veterans Administration has given its administrators the complete, standardless, and unfettered discretion to bar partisan activity on VA campuses. We're here because a VA administrator in Menlo Park, and since that time, VA administrators in places such as Seattle and San Francisco, are barring members of any political party, Republican or Democrat, from registering voters at VA long-term care facilities, like Building 331 at the VA's Menlo Park facility. What would this panel have to do to rule in your favor? This court could do a number of different things to rule in your favor. Specifically, to rule in your favor, would we have to overrule Monterey County? No, the court wouldn't have to do that. And the reason why is you can count. There are only three of us up here. Fair enough, Your Honor. And the good news is that Monterey County relates to post offices. And what we're dealing with here — Is that the only basis to distinguish it? Well, there are a couple of other reasons to distinguish it. Doesn't it stand for the proposition that a government agency that takes an across-the-board, neutral, nonpartisan stance to activities like this is within the zone of reasonableness? That's correct, Your Honor. Okay. So how is a VA hospital different from a post office? Well, what the VA is doing is exercising viewpoint discrimination against political parties vis-à-vis other what it calls nonpartisan organizations. In other words, the VA is making a distinction between apolitical organizations, like the League of Women's Voters, and political organizations, like the Democratic Party. That's the key distinction here, and that's viewpoint discrimination, because the way that one registers a voter is going to be different depending on which group is doing the registering. For example, the League of Women's Voters might go and ask a person, would you like to register to vote? Period. The Democratic Party has a specific viewpoint in mind. They will ask the question, would you like to register to vote as a Democrat? Doesn't that just make the VA's case for it, that it's partisan political activity? Well, there are a couple of different things going on with respect to this. It's a yes or no question. Doesn't that make the VA's case that what you're asking to do is partisan political activity? Would you like to register to vote as a Democrat or as a Republican or as a Libertarian? Isn't that partisan? Yes, it is. Okay. Well, we have to assume for purposes of this case that the regulation itself is valid that allows the exclusion of partisan political activity. So where does that leave you? Well, there are a number of different things going on here. First of all, what the Democratic Party would like to do is be able to enter a facility and say, would you like to register to vote as a Democrat? What happened, as the record reflects below, is that they came without the intent to ask that next partisan question. They entered the facility simply wanting to do what the League of Women Voters typically does, which is ask the residents there whether they would like to register to vote, period. Is Mr. Preminger content to simply have that right to ask if they wish to register without mentioning a party? Is he content to have that right? Well, it's a very important right, and certainly the Democratic Party would like to have the same right that the League of Women Voters has, but no. We would ask this Court to go the next step and analyze the regulation as a viewpoint discriminatory one based on the idea that it's allowing complete standardless discretion on the part of a VA administrator to decide. I'm sorry. I didn't mean to interrupt. No, certainly not. All right. This was actually a question I had intended to ask the counsel for the Secretary. Where I come from, whether you, if you're authorized to register people to vote, whether you yourself are a registered Democrat or Republican or independent, you are absolutely forbidden from refusing to register someone who wants to register with the other party. And the question you propose would be in violation of your appointment as a deputy registrar. Are things different in California? Well, in California, you're absolutely right. Anyone who is going to register someone else to vote is absolutely required to register anyone. But you are allowed to say that you are a Democrat and you would like them to register as a Democrat. And if they say I want to register as a Whig, you have to register them, right? Exactly right, Your Honor. Exactly right. But you still, you're asking for the opportunity to make a partisan pitch to the prospective voters, correct? Well, first, we'd like to ask them whether or not to register to vote. Please answer the question. It's a yes or no question. Yes. You are asking for the opportunity to make a partisan pitch. Yes. Along with, and that's legal in California, apart from the issue of the VA property. That's right. Okay. Now, what has ended up happening here is the district court made a number of different errors with respect to the, even assuming that this is a non-public forum, and I'd like to start from the lowest common denominator, if I might, from at least the plaintiff and appellant's perspective. The district court asked the wrong question here. The district court asked whether it was reasonable to exclude Scott Rafferty, the counsel for Mr. Preminger and the Santa Clara County Democratic Party, instead of looking at the regulation itself and analyzing whether the regulation was reasonable, or asking whether the regulation as applied to voter registration and calling voter registration a partisan activity was reasonable. Well, if voter registration efforts are accompanied by the partisan pitch, why aren't they partisan activities? Well, the record below establishes that in this case, Mr. Preminger did not go with a partisan intent in mind. The Democratic Party would argue that if he did go with a partisan intent in mind, then that certainly would be permissible as well. But to address the concern that the Court has just expressed, the record below establishes that Mr. Preminger went without wearing a button and without intending to give a partisan pitch, and even then he was barred from registering anyone to vote. In fact, he was detained for a few moments by the VA police on the basis that he had an impermissible handbill, and that was under CFR section 1.218A9, I believe. And the pamphlet that he held in his hand was nothing more than a voter registration form, a blank one. And that's why he was detained. If we were to rule in your client's favor, could the day after we ruled someone from the Santa Clara County Republican Party come to the VA hospital and stand in the middle of a ward and say, I'm here on behalf of the local Republican committee, as you may or may not know, but the secretary of the Veterans Affairs Department is a former official of the Republican Party nationally. And he, of course, was appointed by a Republican president. And anyone who registers as a Republican today, I will bring to the attention of Jim Nicholson that fact. And you never know. Maybe your benefits case will be hurried along a little more. Would that be permissible? Well, I believe that that could conceivably be criminally actionable if he is intending to communicate the notion that he can curry favor with the VA administrator. In terms of actually sitting there and expressing that type of political speech and that type of coercion on the residents, that would probably relate to a different issue. It could conceivably be disruptive. But even ---- But standing in front of them and saying, I'm here to register Democrats would not be. No, it wouldn't. Nor would he going to the facility and saying, I'm here to register Republicans. So long as he registers all comers, it's fine. Now, this is an underserved population also. I mean, the record reflects that out of the 150 or so beds at this Building 331 facility, literally in the past 10 years before this lawsuit was brought, there were only seven people who actually voted. There is something seriously wrong with looking at this regulation and finding it reasonable at that point to say that people can't go and try to meet with this underserved population. Also, the San Marcano case from this Court says that when there are other means of achieving the ends sought by the government, not necessarily the least restrictive means, but if there's something that's simpler, the San Marcano case says that's great evidence that a regulation is unreasonable. Mr. Markman, I have a question about the extent of what you're asking for geographically. It was unclear to me whether what you're seeking is access to Building 331 or access more generally to all of the premises. And if you are seeking access to all of the premises, does the same public versus non-public forum analysis apply to the whole of the VA campus or not? Well, the analysis certainly would be different. And what we are asking for is access to the VA facility in Menlo Park and elsewhere, specifically long-term care facilities. But now there has been a cloud thrown up in the district court over whether a member of the Democratic Party can visit any VA campus anywhere. Certainly the public, non-public forum analysis would be different as with respect to different areas on the campus. So, for example, the streets leading up to the campus might be classified differently than the interior of Building 331. So who bears the burden of demonstrating the public nature of areas that are within the perimeter of the VA facility, not just the totally public streets outside, but the walkways and so forth within? Is that your burden? That's the government's burden because this is a prior restraint. So you're seeking an injection. It's not your burden in support of your request for an injection? Appellant's burden is to show a likelihood of success on the merits, certainly. But its burden is not to show that the facility is non-public. That is a burden that the government bears with respect to the ultimate question. You're seeking access to the entire facility, whether it's people that are undergoing treatment that may require isolation from the public, et cetera. No, and I didn't mean to sound like I was. We're not seeking to enter the locked facilities that house incompetent or patients who have severe mental incapacities. What's your record basis for the assertion that these people are not voting because they're not registered? Maybe they don't want to vote. It's entirely possible they don't want to vote. We point to the statistics to highlight the fact that there may very well be an issue here, and in order to respond to the government's efforts to suggest that everything is fine, that they allow the League of Women Voters to attend, they allow a few other apolitical organizations to register folks to vote at this facility. They say that the regulation is reasonable and it's not viewpoint discriminatory because they're serving this population. And there are a number of declarations that the government submitted below on that point. So merely we cite the statistics merely to address that issue. You're under three minutes. Did you want to save the balance of your time?  Okay. Thank you, counsel. We'll hear from the Secretary at this time. May it please the Court. Thank you. Good morning. Good afternoon. I'm sorry. My name is Owen Mardik, an assistant U.S. attorney representing the appellees. Before I begin, I would like to thank the Court and the appellants for changing this date. It was to accommodate my schedule, and I do appreciate that. Again, the first to thank is Judge Selma. Thank you, Judge Selma. I do appreciate that. To get into the merits of the discussion, I'd like to point out what I believe are some key points that were just made and also some problems with some of the arguments that were just made. The first key point is when counsel said early on in his presentation that the way one registers voters is different depending on whether it's done by the League of Women Voters or the Democratic Party. That's not true, is it? It's very true. I think it's very true, and it gets to the nub of the problem here, which they acknowledge maybe not as explicitly because I think it really damages their case. But it's the same point that the Supreme Court was getting at in the McConnell case, which is that a partisan voter registration drive is very different from a voter registration drive that's done by someone else. Well, the drive may be different, but the individual process of filling out the form, it's the same form, correct? Whether it's given to you by the League of Women Voters or the registrar or Democrat or Republican, right? Absolutely. The form is the same, and the way the form is filled out may be the same, but it's what surrounds that process that — It's the pitch. Exactly, Your Honor. That's what concerned the Supreme Court, and that's what I believe should concern this Court. But Mr. Preminger says in his trial declaration that he would be willing not to identify himself as a Democrat. Seemingly, he would go in on the same terms as the League of Women Voters. If he did that, would that qualify as partisan conduct which could be excluded? It would, because whatever he — Even if he didn't identify himself as a Democrat. I'm sorry, I didn't — Even if he did not identify himself as a Democrat. Well, if he did not — it depends how he's going in. I mean, he's going in as — he may not identify himself as the chairman of the Democratic Party, but he is the chairman of the Democratic Party. He's going in there with a very specific agenda, and that is — Well, suppose the president of the local League of Women Voters is married to a Republican council member or something, and everybody knows that. Does that mean that now the League of Women Voters person can't come in either because people might know of her, you know, affiliation with a particular political party? What's the evil there? The distinction, Your Honor, is actually described to some degree in the record at ER 200, which is a document that describes who the League of Women Voters is in San Mateo County and what they do, because they maintain a very bright-line distinction between advocacy and voter education administration. Well, what I take Judge Selma's question to be, though, is whether the injunction is overbroad. In other words, can the district court legitimately and can the VA legitimately do any more than say a person may register voters but may not make any partisan pitch of any kind, may not identify themselves either by buttons or banners or speech as being affiliated with a partisan cause? Why isn't that broad enough or more tailored to the concerns that the VA has? Well, I think the VA comes at it from the other direction, which is that they are there to promote patient care. So when they decide who to bring in to register voters, they begin from the opposite end, which is that this is something that is not directly related to patient care. It's something that we do in order to make sure people are involved in civic affairs. So they look at organizations that are specifically known to the public and to everyone as being for the sake of voter education and not to pursue a particular agenda. The person that's authorized to hand an individual qualified but unregistered voter a card to have them fill out to become a registered voter is required by law, whoever they are, to fill that out in any way that the person is authorized to do. So they're not going to be a Democrat, Libertarian, Socialist, whatever, right? I believe that's the case, yes. And in that respect, there is no difference between the act of registration between someone from the League of Women Voters, someone from the Republican Party, someone from the Democratic Party, or the head of the So why couldn't, as Judge Selma's question suggests, the VA simply say you can't go into the ward, but in a common area you can put up a table saying we're here to register voters. You can't wear buttons. You can't fly the flag if there is one of the Democratic Party. But if people want to come out and they want to register to vote, they can register to vote. What's wrong with that? The concern that the VA has is the same as the concern that the Supreme Court had, which is that there is a tremendous, as I believe the last election showed, a tremendous motive for a party member, a party organization to get a person to register their way. It may be almost subliminal. It may be almost subconscious that they have that motivation. Well, I suppose that the Democratic Party of Santa Clara County didn't pick a VA home because they thought it would be loaded with potential Republicans, right? Is the question could they have done it for that reason? Well, I assume they focused on the veterans' home because there's people there who are unregistered, as counsel suggested, that hadn't voted, maybe because they weren't interested, maybe because they just didn't know they could register to vote, but they're there because they feel it's fertile ground for registering people. If they go in there and register 100 people, they're probably going to register 65 or 70 Democrats. My guess is that's what they're thinking. So why wouldn't they be willing to go in there without any sign or any partisan kind of label and just we'll take whoever wants to register, but we're here because we think this is fertile ground for registering Democrats. What's wrong with that? Well, there are two answers. The first is, and I'll deal with this last because this isn't exactly Your Honor's question, but this issue about how the area is underserved I think is based on some spurious factual assumptions, which I'll get to later. But the main issue is certainly they believed it was fertile ground to register Democrats. I believe because it was somewhat publicized around this time last year that because the Democratic candidate was a veteran of Vietnam that perhaps he was trying to get more veteran voters. So I believe it was part of a broader campaign to do that. And certainly they could agree to eliminate any outward signs of partisanship, no hats, no pins, but the point is the VA can't have partisanship policemen standing there when they talk to these people. They know that once they're in, once they're talking to someone. They don't have that with the League of Women Voters either. And if it's all subliminal, every one of those people who's interested enough in political life is registered with something. There's always going to be that risk, that's true. But the League of Women Voters, because of its nature as a 501C3 organization, the part that does these campaigns, and because it's widely known as a nonpartisan organization that is interested purely in voter registration, it's much less of a risk than bringing in a national party figure. We're running out of time. I want to ask you about the other parts of the campus as well. Is our analysis different with respect to the exteriors of the buildings, the sidewalks and that sort of thing that are within the perimeter but are still what would be normally looked at as public sidewalks? No, they're not, Your Honor. Why not? It is a campus in the sense of being removed from the outside thoroughfares. So the sidewalks there are similar to the walkways in the Monterey County case. They're outside, they're made of the same material, they look like sidewalks, but they're separate from public thoroughfares. The patient care issues are certainly different. If someone's well enough to be out walking around, it's not going to disrupt them. There are different issues, but for the purposes of forum analysis purely, is it a nonpublic forum, is there a public forum on the campus, the analysis is the same. So for the purposes of Your Honor's question, it's a nonpublic forum. And I wanted to make two points in my waning minutes here, the first having to do with this issue about how voters are underserved. That's based on some evidence from the county registrar of voters that is at the excerpts of record at pages 186 and 187. First of all, the declaration here itself notes that there's some strange inaccuracies in that data and problems with that data. But second of all, that would only show voters from that county, voters that are registered in that county. If voters are registered absentee, which is very likely because you have patients coming in from all over to this facility, then they wouldn't show up on that record. So to say that because someone registered in that county, or only a few people registered in that county have voted in that record, that's not true. And to say that there are people registered in that county in a previous election isn't to say that there aren't people registered elsewhere who just don't show up in that analysis. But the final and most important point, I believe, comes from the Monterey County case. And I think the first question this Court asked the appellant is the pertinent one, to which they don't have a good answer. In that opinion, this Court quotes Cornelius, the Supreme Court opinion, and says, in Cornelius, the Court stated that avoiding the appearance of political favoritism is a valid justification for limiting speech in nonpublic forum. And that same quote, that sentence applies here the same way that the Monterey County case applies here. But in Monterey County, wasn't the regulation much more beneficial to the post office's position in that it specifically carved out political groups? Here we're left with kind of an open-ended definition as to what's partisan activity. It's true that the definitions are different. I don't agree that the definition is too broad that it can't be parsed. Well, let me ask you this. Is registration in the abstract a partisan activity? And if not, what makes it partisan? It can be a partisan activity. First, in the abstract, is it a partisan activity? In the abstract, simply registering to vote is not a partisan activity. That's true. What makes it partisan? It's what the Supreme Court, I believe, noted in the McConnell case, because they specifically talk about partisan voter registration, which is that the parties put a tremendous amount of effort and money behind using voter registration drives to register people to their party, not just any party. Certainly if someone said, well, I'm a Democratic Party member. I want to register green or I want to register something else, they would be allowed to do so. But what's worrisome is that the person doing the registering has the motive to try to dissuade them, rather than just simply say, okay, they have a very specific motive that is what concerns the VA and what I think has concerned this Court and the Supreme Court. Is the identity of the registrar sufficient all by itself to turn the activity of registration from a nonpartisan activity to a partisan activity? It could be, especially when the identity is... When could it and when couldn't it, just on the basis of the identity? Well, this, I suppose, is the easiest case, because here the registrar is the party, and there's nothing more partisan than the actual political party. So there... Well, registrars are individual human beings. Yes. It's not a corporation walking in. Certainly. So what is it, if someone doesn't have on a button or a hat or any insignia of any kind, what is it that makes the mere fact of their love for a particular political party partisan? Well, what's concerning to the secretary is not just that the person who is the patient, for example, may believe that that person is nonpartisan. They may not have any outward signs of being partisan, but the VA knows that they are, because they have come aboard or asked permission to come aboard as a Democratic Party, and the VA is concerned that that message is going to come out, because the motivation for it to come out is simply so strong. Certainly, a League of Women Voters member could be registered as a Democrat, could be registered as a Republican, but I'm certain that by the nature of that organization, that they're trained very specifically about the nonpartisan function of their job. It would be improper for any deputy registrar, whichever party they're affiliated with, to refuse to register someone of the opposite party, right? I agree with that. Or to refuse to accommodate the request of a registrant to register with a particular party. That's governed by California state law, is that right? I believe so, yes, Your Honor. So is the VA attempting to police the enforcement of California state law? No. I think the VA is attempting to. Are they assuming that these individuals will violate their oath of office as deputy registrars? No. And the VA is not concerned or is less concerned with the fact that a voter registration person may ultimately just refuse to register someone as a Republican or a Democrat, whatever the case may be. The concern is that that person is coming in specifically to persuade someone to a partisan position. So it's really, it's what goes on before. But to persuade them to a partisan position would involve them violating their duties as a deputy registrar, wouldn't it? I don't agree, Your Honor, because I think someone could certainly try to dissuade someone from registering as a Republican or a Democrat. And not violate their oath as a deputy registrar. They could say to someone, you sure you want to be a Republican? Frankly, I can't speak to that specifically enough, to what that state law issue is. But I think the distinction is what's worrisome is the fact that they're coming there not just to refuse to register someone, but to push a partisan agenda. Okay. Thank you for your argument. Thank you. Appreciate you coming in today. Rebuttal? Thank you, Your Honor. Counsel, do you really want the sort of whitewashed version, if that's all that the court were to conclude is permissible, that is to come in with no identification and no opportunity to make any statement other than I'm here to register voters of whatever persuasion? Do you really want that opportunity? We would like that opportunity if that's what all the court that can grant. But I can assure the court we will be back. And we will deal with the pitch issue. We'll just have to wait until another case. But this Court has the opportunity to deal with it both as an as-applied challenge and as a facial challenge. Because what we've just heard You've got a problem with facial challenge, don't you? Well, there's a jurisdictional argument that the government makes, and respectfully, under the U.S. Supreme Court's decision in the city of Lakewood, when you have a standardless licensing scheme like the one here, the language in that case says that there is always a facial challenge available. Now, the government says that the facial challenge has to be brought in the federal circuit, and if that is what this Court finds, then we would ask that that portion of the case be transferred there. But we believe that this Court and the district court both have general federal question jurisdiction to deal with this issue. Because we're not asking for a Chevron review. We're not asking for an APA review. All we're If they have to go back to Washington and argue this issue in front of a bunch of patent lawyers. And that's what we'll do. As a matter of fact, Your Honor, I practice intellectual property litigation, and we're doing this on a pro bono basis. And if that's what I need to do, then that's what I will do. But this Court has the jurisdiction to do that. And even if we decide that this is a nonpublic forum here, what we have heard is the government's admission that this is viewpoint discrimination. 1984, getting into Mr. Preminger's head to decide whether or not he is going to make his partisan pitch and whether he is going to push it too far or whether he's going to violate the California election code and refuse to register someone who says, I want to be a citizen. There's a step before that, though. One can encourage without violating the elections code by coming in, wearing all the Democratic stuff and saying, I really believe in the Democratic Party or the Republican Party, and I'm hoping that every one of you who wants to register will register my way, and then doing whatever the person asks them to do. Yes. But why can't the VA say, we don't want to have to police that? That was part of the government's argument today. And that is, if we allow only nonpartisan groups to come in, then we are pretty sure that they will stay nonpartisan. Otherwise, we have to have somebody standing there to make sure that they do what they're supposed to do, not in violation of the law, but not in violation of their regulation about partisan activity. So why should they have to go to that trouble? The First Amendment says so. The First Amendment gives the government an obligation to allow for speech, especially in a forum like this where there's no other ---- But you're assuming it's ñ we're assuming now it's a nonpublic forum, and in the Monterey County case, they were allowed to make that kind of a distinction. So why can't the VA make that distinction here? Well, unlike the Monterey case, there's no other way to reach these individuals. In Monterey, all you have to do is move to a different sidewalk just down the street. Here, there's no other access to Building 331. I see my time is up. I'd be happy to continue. I don't see any other questions. Counsel, thank you very much for your argument. Thank you both for coming in today. It's a very interesting case. We appreciate it. And the Court will stand adjourned until reassembled. Thank you.
judges: Hawkins, Graber, Selna